Daniel Feder (SBN 130867)
**LAW OFFICES OF DANIEL FEDER**
235 Montgomery Street Suite 1019
San Francisco, CA 94104
Telephone: (415) 391-9476
Facsimile:  (415) 391-9432
Email: Daniel@dfederlaw.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| T. DORIUS, an individual,<br><br>   Plaintiff,<br><br>   v.<br><br>SSA ARCHITECTURE & PLANNING, INC., a California Corporation; SALLY SWANSON ARCHITECTURE, INC., a California Corporation; and DOES 1 through 50, inclusive,<br><br>   Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Disability Discrimination (FEHA)**<br>**2. Failure to Provide Reasonable Accommodation (FEHA)**<br>**3. Failure to Engage in Interactive Process (FEHA)**<br>**4. Disability Harassment (FEHA)**<br>**5. Retaliation (FEHA)**<br>**6. Wrongful Termination in Violation of Public Policy**<br>**7. Breach of Contract**<br>**8. Fraudulent Misrepresentation**<br>**9. Intentional Infliction of Emotional Distress**<br>**10. Waiting Time Penalties (Labor Code § 203)**<br>**11.  Breach of Contract – Unpaid Wages (Alabama Law – Pleaded in the Alternative)**<br>**12.  Work and Labor Done / Quantum Meruit (Alabama Law – Pleaded in the Alternative)**<br>**13.  Invasion of Privacy – Disclosure of Private Medical Information (Alabama Law – Pleaded in the Alternative)**<br><br>**DEMAND FOR JURY TRIAL** |

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

1
**Plaintiff's Complaint for Damages**

Plaintiff T. Dorius, by and through undersigned counsel, complains and alleges against Defendants SSA Architecture & Planning, Inc. and Sally Swanson Architecture, Inc. as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction). Plaintiff is a citizen of Alabama. Defendants are California corporations with their principal places of business in San Francisco, California. Complete diversity of citizenship exists between Plaintiff and Defendants. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.    Plaintiff seeks damages in excess of $75,000.00, exclusive of interest and costs, including but not limited to compensatory damages exceeding $65,000 for lost wages and benefits, general damages exceeding $125,000 for emotional distress, mental anguish, and reputational harm, front pay, waiting time penalties under California Labor Code section 203, punitive damages, and attorneys' fees and costs. The aggregate amount in controversy therefore exceeds $75,000.00, exclusive of interest and costs.

3.    This Court has supplemental jurisdiction over Plaintiff's California state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendants maintain their principal places of business in San Francisco, California, and all employment decisions, managerial oversight, human resources functions, payroll operations, and adverse employment actions at issue in this case emanated from Defendants' San Francisco headquarters within this District.

## II.    PARTIES

5.    Plaintiff T. Dorius is an individual over the age of 18 and is a citizen and resident of Alabama. At all times relevant herein, Plaintiff was employed by Defendants as an ADA Policy Specialist/Trainer, working remotely from Alabama.

2
**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

6.     Defendant SSA Architecture & Planning, Inc. is a California corporation with its principal place of business located at 500 Sansome Street, Suite 410, San Francisco, California 94111. Defendant SSA Architecture & Planning, Inc. is incorporated under the laws of the State of California. At all relevant times, Defendant was doing business and maintained offices in California and other states, including offices in San Francisco, Burbank, Tempe, New York, and Seattle. Defendant was an employer of Plaintiff and acted within the scope of that employment relationship when engaging in the conduct alleged herein. Defendant is an employer within the meaning of the California Fair Employment and Housing Act, California Government Code section 12940 et seq.

7.     Defendant Sally Swanson Architecture, Inc. is a California corporation with its principal place of business located at 500 Sansome Street, Suite 410, San Francisco, California 94111. Defendant Sally Swanson Architecture, Inc. is incorporated under the laws of the State of California. At all relevant times, Defendant was doing business in California. Defendant was an employer of Plaintiff and acted within the scope of that employment relationship when engaging in the conduct alleged herein. Defendant is an employer within the meaning of the California Fair Employment and Housing Act, California Government Code section 12940 et seq.

8.     At all times material hereto, Defendants SSA Architecture & Planning, Inc. and Sally Swanson Architecture, Inc. were joint employers, operated as integrated enterprises, and are jointly and severally liable for the unlawful conduct alleged herein. Defendants maintained common management, interrelated operations, centralized control of labor relations, and common ownership. Defendants are hereinafter collectively referred to as "Defendants."

### III.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On or about February 17, 2025, Plaintiff timely filed a complaint of discrimination and retaliation with the California Civil Rights Department (CRD), alleging violations of the California Fair Employment and Housing Act based on disability discrimination, failure to accommodate, failure to engage in the interactive process, harassment, and retaliation.

10.     On October 21, 2025, the CRD issued Plaintiff a Notice of Case Closure and Right to Sue, CRD Matter Number 202510-31838621.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

11. Plaintiff timely received the CRD Notice of Case Closure and Right to Sue on or about October 21, 2025.

12. This Complaint is filed within one year of Plaintiff's receipt of the Notice of Case Closure and Right to Sue, as required by California Government Code section 12965(b).

13. Plaintiff has exhausted all administrative remedies required as a prerequisite to filing this action under the California Fair Employment and Housing Act.

## IV. GENERAL FACTUAL ALLEGATIONS

A. Employment Relationship and California Control

14. Plaintiff began her employment with Defendants, San Francisco-based firms specializing in ADA Access Compliance and Civic and Educational Design, on November 9, 2022. She was hired as an ADA Policy Specialist/Trainer with an initial annual salary of $70,000, which was later increased to $95,000 in October 2024 based on her strong performance.

15. Although Plaintiff worked remotely from her residence in Alabama, all employment terms, conditions, and management oversight came from Defendants' San Francisco, California headquarters. Her initial offer letter dated November 8, 2022, and all subsequent employment documents were issued from Defendants' San Francisco office at 500 Sansome Street.

16. The November 8, 2022 offer letter identified Plaintiff's position as a permanent full-time "ADA Policy Specialist/Trainer" working remotely, with an annual salary of $70,000 paid in semimonthly installments, 40 hours per week (exempt status), 120 hours of paid time off per year, health and vision benefits, and 9 standard holidays.

17. The job description attached to Plaintiff's offer letter detailed extensive responsibilities requiring expertise in ADA compliance, including conducting training on accessible meeting production, analyzing essential functions in job descriptions, developing reasonable accommodation policies, providing guidance on undue hardship and direct threat determinations, and counseling clients on ADA, FMLA, workers' compensation, and California disability employment law.

18. The job description specifically stated that Plaintiff would focus on counseling and advising clients on ADA and EEO compliance issues, represent clients during investigations and

audits by government agencies, and develop guidance documents on policies including an "Employee Reasonable Accommodation Policy (Based upon California Gov. Code 12926)." Plaintiff's work involved applying and training on California disability employment law.

19.    All work assignments, performance evaluations, and employment decisions were made by California-based management from Defendants' San Francisco headquarters. Plaintiff reported directly to CEO Sally Swanson, who was based in San Francisco, and regularly interacted with other California-based management, including HR Director Brenda Nasio and accountant Zacharie Morales.

20.    Defendants maintained centralized control of all employment functions from their San Francisco headquarters, including payroll operations through Defendants' California bank account with UMPQUA Bank, personnel records and HR documentation, performance evaluations and salary decisions, and corporate policies and procedures.

B.    Plaintiff's Disability and Protected Status

21.    Plaintiff is a cancer survivor and has a disability within the meaning of the California Fair Employment and Housing Act. In 2021, prior to her employment with Defendants, Plaintiff was diagnosed with Stage III breast cancer and underwent extensive treatment including surgery, chemotherapy, and radiation therapy.

22.    The cancer and its treatment resulted in ongoing physical limitations, chronic fatigue, and a compromised immune system that substantially limit one or more major life activities, qualifying Plaintiff's condition as a disability under California Government Code section 12926.1.

23.    Defendants were aware of Plaintiff's disability status throughout her employment. Plaintiff's medical appointments and need for time off for continuing medical care and monitoring were known to Defendants' management, particularly CEO Sally Swanson, who made continuous references to Plaintiff's medical appointments and medical-related absences.

24.    Despite her disability, Plaintiff was able to perform the essential functions of her position as ADA Policy Specialist/Trainer with or without reasonable accommodation. Throughout her employment, Plaintiff consistently met or exceeded job expectations and received positive

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

5

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

feedback regarding her work performance, including a promotion and salary increase to $95,000 in October 2024.

C.      California Business Trip and Escalation of Discriminatory Conduct

25.      On June 6, 2024, Plaintiff took a four-day business trip to California paid for by Defendants. CEO Sally Swanson, directing operations from the San Francisco headquarters, instructed Plaintiff that it was imperative for the company that she attend an interview for a job bid with the City of Los Banos, California, stating that Plaintiff was the only person in the company with the knowledge and confidence to represent the team and that the California project was crucial to the company being able to make payroll for the next couple of months.

26.      When Plaintiff informed Sally Swanson that her health status made it difficult for her to travel, Swanson became irate every time Plaintiff mentioned that her health made these trips difficult due to the wear and tear on her body from traveling by air and car. Swanson emphasized that California travel was part of Plaintiff's job duties and that it was mandatory for Plaintiff to attend the California interview.

27.      Plaintiff successfully represented Defendants at the California interview in Los Banos and Defendants received the job. Despite the trip being difficult for Plaintiff due to the long cross-country flight and hours of driving from San Jose to Los Banos, Plaintiff performed her duties effectively.

28.      Following this success, Sally Swanson, from the San Francisco office, informed Plaintiff that more of these trips to California would be likely in the future, including international travel. When Plaintiff again emphasized that she would not be able to travel due to her health, Swanson became upset and threatened to examine Plaintiff's job duties and time off because she thought Plaintiff was lying about not putting in time off requests when she had doctor appointments.

29.      Swanson further stated she would need to see what other duties she could add to Plaintiff's job responsibilities because she did not think Plaintiff was doing enough. These threats came directly from California-based management in response to Plaintiff's expression of disability-related limitations.

**Plaintiff's Complaint for Damages**

D.      June 2024 Harassment and Coercive Practices from California Management

30.        In June 2024, Defendants, through San Francisco-based CEO Sally Swanson and accountant Zacharie Morales, subjected Plaintiff to coercive practices by pressuring her to falsely claim unapproved time off and misrepresent her medical appointments. This coercion came directly from California management and demonstrated Defendants' discriminatory intent to penalize Plaintiff for disability-related absences rather than provide legally required accommodations.

E.      August 1, 2024 Formal Disability Discrimination Complaint

31.        On August 1, 2024, Plaintiff sent a formal email complaint to HR Director Brenda Nasio at Defendants' San Francisco headquarters, specifically invoking her rights under the Americans with Disabilities Act and California law, and complaining about Sally Swanson's violations of those rights.

32.        In this August 1, 2024 email, Plaintiff stated: "In your role as Human Resources, I wanted to discuss Sally's violation of my rights under the ADA. Specifically, her continuous references to my medical appointments and taking 'tons' of time off."

33.        Plaintiff further stated in the August 1, 2024 email: "Her allegations are false, and she is creating a hostile work environment for me with her false allegations and her sharing my private medical information with others at the firm."

34.     Plaintiff specifically identified herself in the August 1, 2024 complaint as "disabled, as defined under the ADA, and protected from discrimination and harassment related to my medical appointments and any accommodations to my work schedule that I request to attend these."

35.     Plaintiff stated in her August 1, 2024 complaint: "I will not tolerate Sally creating a hostile workplace for me by discussing my medical status with anyone else at the office. My medical status is private and protected information. I will not tolerate any further harassment from Sally on the issue of my medical appointments or my PTO."

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

36.     Plaintiff stated in her August 1, 2024 complaint: "I am incredibly disappointed and upset by her aggressive behavior and false accusations. She has caused me mental and physical distress."

36A.    Plaintiff learned that Swanson had disclosed her private medical information to others at the firm through statements made to Plaintiff by coworkers and through Swanson's own references to having discussed Plaintiff's medical status with other team members during June and July 2024. These disclosures were made to individuals who had no legitimate need to know Plaintiff's medical information and served no business purpose.

37.     This complaint was sent to Defendants' California headquarters and received by California-based HR management. No remedial action was taken.

F.     Escalating Retaliation Following Protected Complaint

38.     Following Plaintiff's August 1, 2024 disability discrimination complaint to California headquarters, Defendants' discriminatory and retaliatory conduct escalated. Swanson's behavior, directed from San Francisco, became increasingly hostile, culminating in Plaintiff's termination in December 2024, shortly after Plaintiff's final complaints about wage violations.

39.     At all relevant times, Defendants operated and managed Plaintiff's employment relationship from California. Defendants are California corporations headquartered in San Francisco, California. Their Human Resources function, executive management, payroll operations, personnel files, corporate policies, and employment decisionmaking were centralized and administered from Defendants' San Francisco headquarters.

40.     Although Plaintiff performed work remotely, Plaintiff's reporting structure, supervision, evaluations, work assignments, payroll administration, and disciplinary oversight were directed from California. Plaintiff reported to and was supervised by California-based executives and managers located in San Francisco, including CEO Sally Swanson and HR Director Brenda Nasio.

41.     The material employment decisions at issue in this case—including hiring, compensation changes, performance evaluation criteria, discipline, investigation of Plaintiff's complaints, and the decision to terminate Plaintiff—were made, approved, and communicated

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

from California. The decisionmakers who conceived and executed the adverse employment actions were located in California at the time those decisions were made.

42. Defendants' payroll functions were administered from California and funded through Defendants' California-based banking and financial operations. Defendants issued Plaintiff's wages through payroll processes controlled from San Francisco, and the payroll breakdown in December 2024—including the delayed and bounced paycheck and subsequent payroll communications—resulted from decisions and actions taken by California-based management.

43. Plaintiff's job duties were themselves California-centered and required specialized knowledge of California law and California regulatory compliance. Plaintiff was hired as an ADA Policy Specialist/Trainer to counsel and advise Defendants and Defendants' clients on disability access compliance and workplace disability laws, including California disability employment law and policies applicable to California public-agency clients and California-based projects.

44. In performing her core job functions, Plaintiff routinely researched, interpreted, and applied California legal standards and California disability-access requirements. Plaintiff's work product—including ADA compliance trainings, policy guidance, and recommendations—was designed to ensure Defendants' and their clients' compliance with California regulatory obligations. In that sense, Plaintiff's work was directed at and operated within California's regulatory framework, and Defendants received the benefit of that work in California.

45. Plaintiff's protected complaints were directed to California-based management and concerned conduct originating in California. For example, Plaintiff submitted written complaints to Defendants' California-based Human Resources function regarding disability-related harassment and the mishandling of her protected medical information; those complaints were received, reviewed, and handled through Defendants' San Francisco headquarters.

46. The retaliatory conduct alleged in this Complaint was conceived and executed by California-based decisionmakers. Following Plaintiff's protected complaints, Defendants— through California-based executives—escalated scrutiny and hostility toward Plaintiff and then used sudden, pretextual "performance" criticisms as a predicate for termination.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

47.     The culminating adverse action—Plaintiff's termination—was a California decision. The termination decision was made and authorized in San Francisco by Defendants' California-based executive leadership and then communicated to Plaintiff from California. The wrongful conduct underlying Plaintiff's claims therefore occurred in California, where Defendants' decisionmakers acted, and where Defendants' employment policies and practices were administered.

48.     California has a strong interest in regulating the conduct of California employers and California-based decisionmakers who originate discriminatory, retaliatory, and unlawful employment practices from within this State. Defendants' attempt to avoid California's worker-protection laws based solely on Plaintiff's remote location would permit California employers to export unlawful conduct from California while evading accountability under California statutes.

49.     Accordingly, the material events giving rise to Plaintiff's claims—including the discriminatory and retaliatory decisions, the mishandling of disability-related complaints, the wage-payment breakdown, and the termination—were substantially connected to and occurred in California, and a substantial part of the events or omissions giving rise to these claims took place in this District.

G.     November-December 2024 Payroll Issues from California

50.     On November 30, 2024, Plaintiff did not receive her scheduled paycheck. After multiple inquiries to the San Francisco office, Defendants sent a check via FedEx on December 4 or 5, 2024.

51.     This check, issued from Defendants' California bank account with UMPQUA Bank, bounced due to insufficient funds. The decision to issue an unfunded check came from Defendants' California headquarters where all payroll decisions were made.

52.     On December 7, 2024, Sally Swanson sent a group email from the San Francisco office acknowledging "the error at UMPQUA" and stating there was "confusion about a deposit at the bank last week" and that she was "unable to deliver your checks," promising to "take care of this first thing on Monday."

H.     December 9, 2024 Final Complaint and Same-Day Termination from California

**Plaintiff's Complaint for Damages**

53. On the morning of December 9, 2024, at 8:32 a.m., Plaintiff emailed Sally Swanson and the entire team at Defendants' San Francisco headquarters about the payroll issue, stating: "Please provide us an update regarding our paycheck as soon as possible. I will not attend today's meeting unless the pay issue is resolved. I, like everyone else on this team, have bills to pay and this check bouncing is causing me and my family trouble. Now I need to go to the bank and figure out how to solve the problems that this bounced paycheck has caused. Please let us know exactly what you are doing to resolve this and exactly when we are getting paid."

54. From the San Francisco office, Sally Swanson sent both a group email acknowledging the error and a separate, private email to Plaintiff expressing performance concerns for the first time in Plaintiff's employment. This decision was made at Defendants' California headquarters.

55. When Plaintiff informed Swanson she needed to address the bounced check with her bank rather than attend an office meeting, Swanson, acting from Defendants' San Francisco headquarters, terminated Plaintiff's employment effective 2:00 p.m. that same day, December 9, 2024.

56. The termination decision was made and communicated by CEO Sally Swanson from the San Francisco office, where all executive decision-making occurred. All adverse employment actions, including the discriminatory conduct, harassment, coercion, and ultimate termination, emanated from Defendants' California headquarters and were directed by California-based management.

I.      Pretext and Causation

57. The performance concerns raised for the first time on December 9, 2024, immediately before termination, were pretextual. Plaintiff had received a promotion and salary increase from $70,000 to $95,000 in October 2024, just two months before her termination, demonstrating her strong performance.

58. No performance issues had been raised at any time during Plaintiff's employment prior to the morning of December 9, 2024, the same day Plaintiff complained about the bounced paycheck and the same day she was terminated.

**Plaintiff's Complaint for Damages**

59. The temporal proximity between Plaintiff's August 1, 2024 disability discrimination complaint to California headquarters and her December 9, 2024 termination, the escalating hostile treatment following her protected complaint, and the termination occurring within hours of her final complaint about wage violations establish a clear causal connection between Plaintiff's protected activities and the adverse employment actions.

J.      Damages and Impact

60. At all relevant times, Defendants' conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's rights.

61. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings, job benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish.

62. Defendants failed to pay Plaintiff all wages due upon termination in willful violation of California Labor Code sections 201-203, entitling Plaintiff to waiting time penalties.

**FIRST CAUSE OF ACTION**

Disability Discrimination

(California Government Code § 12940(a))

(Against All Defendants)

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. At all relevant times, Defendants were employers engaged in business within the State of California and employed five or more persons within the meaning of California Government Code section 12926(d).

65. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of California Government Code section 12926.1. Plaintiff was diagnosed with Stage III breast cancer in 2021 and underwent extensive treatment including surgery, chemotherapy, and radiation therapy, resulting in ongoing physical limitations, chronic fatigue, and a compromised immune system that substantially limit one or more major life activities.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

66.    Despite her disability, Plaintiff was qualified to perform the essential functions of her position as ADA Policy Specialist/Trainer with or without reasonable accommodation. Throughout her employment, Plaintiff consistently met or exceeded job expectations, received positive feedback, and was promoted with a salary increase to $95,000 in October 2024.

67.    Defendants were aware of Plaintiff's disability status throughout her employment. Plaintiff's medical appointments and need for time off for continuing medical care were known to Defendants' management, particularly CEO Sally Swanson.

68.    Beginning in June 2024, following Plaintiff's California business trip, Defendants, through California-based management, engaged in a pattern of discrimination against Plaintiff because of her disability. When Plaintiff informed CEO Sally Swanson that her health status made travel difficult due to the physical toll on her body, Swanson became irate every time Plaintiff mentioned her health limitations.

69.    Defendants, through their San Francisco headquarters, subjected Plaintiff to different terms and conditions of employment because of her disability, including harassment and hostile treatment regarding her medical appointments and need for medical accommodations, false accusations about her attendance and time off for medical care, threats to add additional job duties because Swanson "did not think I was doing enough" after Plaintiff explained her health limitations regarding travel, creation of a hostile work environment based on her disability status, and coercive practices pressuring her to falsify time records and misrepresent her medical needs.

70.    Following Plaintiff's August 1, 2024 disability discrimination complaint to California headquarters, Defendants' discriminatory conduct escalated. Swanson's behavior became increasingly hostile, culminating in Plaintiff's termination on December 9, 2024.

71.    The discriminatory treatment Plaintiff experienced was because of her disability status as a cancer survivor and was not based on any legitimate, non-discriminatory business reasons. Defendants' assertion of performance concerns immediately prior to termination was pretextual, as evidenced by Plaintiff's recent promotion and salary increase and the fact that no performance issues were raised until the day of termination.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

72. Defendants' conduct violated California Government Code section 12940(a) by discriminating against Plaintiff with respect to the terms, conditions, and privileges of employment because of her disability, and by terminating her employment because of her disability.

73. As a direct and proximate result of Defendants' unlawful disability discrimination, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

74. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION

Failure to Provide Reasonable Accommodation

(California Government Code § 12940(m))

(Against All Defendants)

75. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

76. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of California Government Code section 12926.1 who was able to perform the essential functions of her position with or without reasonable accommodation.

77. Defendants were aware of Plaintiff's disability status and her need for accommodations throughout her employment. As a cancer survivor with ongoing medical needs, Plaintiff required reasonable accommodations including flexibility for medical appointments, time off for continuing medical care and monitoring, and limitations on physically demanding travel that would cause physical stress due to her compromised health status.

78. These accommodations were necessary to enable Plaintiff to perform the essential functions of her position and were reasonable given the nature of her remote work arrangement.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

79.    When Plaintiff informed CEO Sally Swanson during her June 6, 2024 California business trip that her health status made travel difficult due to the wear and tear on her body from traveling by air and car, Swanson, acting from Defendants' California headquarters, became irate every time Plaintiff mentioned her health limitations. Rather than engaging in a dialogue about reasonable accommodations for Plaintiff's travel limitations, Swanson insisted that California travel was "mandatory" despite Plaintiff's clearly expressed health concerns.

80.    Following Plaintiff's expression of disability-related limitations regarding travel, Swanson escalated her hostile response by threatening to examine Plaintiff's time off because she thought Plaintiff was lying about not putting in time off requests when she had doctor appointments, and stated she would need to see what other duties she could add to Plaintiff's job responsibilities because she did not think Plaintiff was doing enough. This response came from California management.

81.    In June 2024, Defendants, through California-based management, further failed to accommodate Plaintiff's disability by pressuring her to falsely claim unapproved time off and misrepresent her medical appointments, demonstrating their intent to penalize her for disability-related absences rather than provide legally required accommodations.

82.    On August 1, 2024, Plaintiff sent a formal email complaint to HR Director Brenda Nasio at Defendants' San Francisco headquarters specifically invoking her rights under disability law and requesting proper accommodations. Rather than providing accommodations following this clear request, Defendants' discriminatory conduct escalated.

83.    Instead of providing reasonable accommodations, Defendants subjected Plaintiff to coercive practices regarding her time off and medical needs, creating a hostile work environment based on her disability status, including making false allegations about Plaintiff's attendance, publicly criticizing her for medical-related absences, and creating an atmosphere where Plaintiff could not safely request necessary medical accommodations.

84.    Defendants' failure to accommodate was not based on any undue hardship. Given Plaintiff's remote work arrangement and the minimal nature of the requested accommodations

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

(flexibility for medical appointments and travel limitations), providing these accommodations would not have caused significant difficulty or expense to Defendants' operations.

85.    As a direct result of Defendants' failure to accommodate her disability, Plaintiff suffered significant emotional and physical distress. As she stated in her August 1, 2024 complaint to California headquarters, Swanson's "aggressive behavior and false accusations" caused her "mental and physical distress."

86.    Defendants' conduct violated California Government Code section 12940(m) by failing to make reasonable accommodations for Plaintiff's known disability.

87.    As a direct and proximate result of Defendants' unlawful failure to accommodate, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

88.    Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

### THIRD CAUSE OF ACTION

Failure to Engage in Interactive Process

(California Government Code § 12940(n))

(Against All Defendants)

89.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90.    California Government Code section 12940(n) requires employers to engage in a timely, good faith, interactive process with disabled employees to determine effective reasonable accommodations.

91.    Defendants, through their California headquarters, completely failed to engage in any good faith interactive process with Plaintiff regarding her disability-related accommodation

needs. Instead of initiating a collaborative discussion about reasonable accommodations, Defendants subjected Plaintiff to criticism, harassment, and coercive practices regarding her medical needs.

92.    Specifically, during and after Plaintiff's June 6, 2024 California business trip, when Plaintiff explained that her health status made travel difficult due to the physical toll on her body, CEO Sally Swanson, directing from San Francisco, became irate every time Plaintiff mentioned her health limitations. Rather than engaging in an interactive process to discuss travel accommodations or alternatives, Swanson insisted that California travel was "mandatory" despite Plaintiff's clearly expressed health concerns.

93.    Following Plaintiff's expression of disability-related limitations regarding travel, Swanson escalated her hostile response by threatening to examine Plaintiff's time off and stating she would add additional job duties because she did not think Plaintiff was doing enough. This response from California management demonstrated a complete failure to engage in the required interactive process and instead sought to punish Plaintiff for her disability-related needs.

94.    On August 1, 2024, Plaintiff sent a formal email complaint to HR Director Brenda Nasio at Defendants' California headquarters specifically invoking her rights under disability law and identifying herself as disabled, providing Defendants with clear notice of Plaintiff's disability status and need for an interactive process regarding accommodations.

95.    Rather than responding to Plaintiff's August 1, 2024 request by engaging in the legally required interactive process, Defendants' California management ignored her accommodation needs and instead escalated their discriminatory conduct. No meeting was held, no discussion occurred, and no good faith effort was made to explore reasonable accommodations for Plaintiff's disability.

96.    In June 2024, instead of engaging in an interactive process, Defendants, through California-based management, subjected Plaintiff to coercive practices by pressuring her to falsely claim unapproved time off and misrepresent her medical appointments, demonstrating Defendants' intent to avoid their legal obligations rather than engage in the required interactive process.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

97.    At no time did Defendants make any good faith effort to discuss Plaintiff's disability-related accommodation needs, explore potential reasonable accommodations, consider Plaintiff's input regarding effective accommodations, evaluate alternatives to physically demanding travel requirements, or modify policies or practices to accommodate her disability-related limitations.

98.    Defendants' failure to engage in the interactive process was in bad faith and demonstrated discriminatory animus toward Plaintiff based on her disability.

99.    Defendants' conduct violated California Government Code section 12940(n) by failing to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations for her known disability.

100.    As a direct and proximate result of Defendants' unlawful failure to engage in the interactive process, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

101.    Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

**FOURTH CAUSE OF ACTION**

Disability Harassment

(California Government Code § 12940(j))

(Against All Defendants)

102.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103.    California Government Code section 12940(j) prohibits harassment of an employee because of disability.

18
**Plaintiff's Complaint for Damages**

104.    Beginning in June 2024 and continuing through Plaintiff's termination in December 2024, Defendants, through CEO Sally Swanson and other California-based management, subjected Plaintiff to severe and pervasive harassment because of her disability as a cancer survivor.

105.    The harassment included continuous hostile references to Plaintiff's medical appointments and medical-related absences, false accusations that Plaintiff was taking "tons" of time off and lying about documenting her medical appointments, becoming irate every time Plaintiff mentioned her health limitations regarding travel, threatening to examine Plaintiff's time off and add additional job duties in retaliation for expressing disability-related limitations, pressuring Plaintiff to falsely claim unapproved time off and misrepresent her medical appointments, publicly discussing Plaintiff's private medical information with others at the firm, creating a hostile work environment where Plaintiff could not safely request necessary medical accommodations, and ultimately terminating Plaintiff in retaliation for opposing this disability-based harassment.

106.    This conduct was unwelcome, severe and pervasive, and based on Plaintiff's disability status. The harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a hostile and abusive working environment.

107.    Plaintiff explicitly complained about this disability-based harassment in her August 1, 2024 email to HR Director Brenda Nasio at Defendants' California headquarters, stating that CEO Swanson's continuous references to her medical appointments, false allegations, and sharing of her private medical information were creating a hostile work environment and causing her "mental and physical distress." Plaintiff stated she would not tolerate any further harassment regarding her medical appointments or PTO.

108.    Defendants knew or should have known of the disability-based harassment and failed to take immediate and appropriate corrective action. Instead, following Plaintiff's August 1, 2024 complaint to California headquarters, the harassment escalated, culminating in Plaintiff's wrongful termination.

109.    Defendants are strictly liable for the harassment committed by CEO Sally Swanson and other supervisory employees, as they had the authority to hire, fire, and direct Plaintiff's work.

19
**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

110. Defendants' conduct violated California Government Code section 12940(j) by harassing Plaintiff because of her disability.

111. As a direct and proximate result of Defendants' unlawful disability harassment, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

112. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## FIFTH CAUSE OF ACTION

Retaliation

(California Government Code § 12940(h))

(Against All Defendants)

113. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

114. California Government Code section 12940(h) prohibits discrimination or retaliation against any person because the person has opposed any practices forbidden under FEHA or because the person has filed a complaint, testified, or assisted in any proceeding under FEHA.

115. Plaintiff engaged in protected activity under California Government Code section 12940(h) by opposing practices made unlawful by FEHA. Beginning in June 2024, when Plaintiff resisted CEO Sally Swanson's demand that she travel to California for business despite her health limitations, Plaintiff opposed discriminatory practices based on her disability status.

116. On August 1, 2024, Plaintiff engaged in protected activity by sending a formal email complaint to HR Director Brenda Nasio at Defendants' San Francisco headquarters specifically invoking her rights under disability law and opposing discriminatory practices. In this complaint, Plaintiff identified herself as disabled and stated that CEO Swanson was violating her

20

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

rights through continuous references to her medical appointments, false allegations about taking "tons" of time off, creating a hostile work environment, and sharing her private medical information with others at the firm.

117.    Plaintiff stated in her August 1, 2024 complaint that she would not tolerate Swanson creating a hostile workplace by discussing her medical status with anyone else at the office and would not tolerate any further harassment regarding her medical appointments or paid time off. This was a clear and explicit opposition to disability discrimination and harassment.

118.    In addition to opposing disability discrimination, Plaintiff engaged in protected activity by opposing other unlawful employment practices when she complained about coercive payroll practices and wage payment violations, culminating in her December 9, 2024 complaints about the bounced paycheck.

119.    Following Plaintiff's protected activities, Defendants, through California management, subjected her to increasingly severe retaliatory conduct. After Plaintiff's June 2024 resistance to discriminatory travel demands and her August 1, 2024 formal disability discrimination complaint, Sally Swanson's behavior, directed from San Francisco, became aggressive and hostile toward Plaintiff.

120.    The retaliation escalated throughout the remainder of 2024. On November 30, 2024, Plaintiff did not receive her scheduled paycheck. After multiple inquiries to the San Francisco office, Defendants sent a check via FedEx on December 4 or 5, 2024, which subsequently bounced due to insufficient funds.

121.    On December 9, 2024, when Plaintiff complained about the bounced check and unpaid wages, Sally Swanson, from the San Francisco headquarters, initially sent a group email acknowledging the payroll error but then sent a separate, private email to Plaintiff raising fabricated performance concerns for the first time in her employment. This was the culmination of the retaliatory pattern that began after Plaintiff's protected complaints about disability discrimination.

122.    When Plaintiff informed Swanson that she needed to address the bounced check issue with her bank rather than attend an office meeting, Swanson, acting from Defendants'

**Plaintiff's Complaint for Damages**

California headquarters, terminated Plaintiff's employment effective 2:00 p.m. that same day. The decision to terminate was made and communicated from Defendants' San Francisco headquarters.

123. The temporal proximity between Plaintiff's protected activities and the escalating retaliatory conduct, culminating in her termination, establishes a clear causal connection. Plaintiff's August 1, 2024 disability discrimination complaint to California headquarters was followed by increasingly hostile treatment, and her termination occurred on the same day she complained about wage violations.

124. Defendants' assertion of performance concerns immediately prior to Plaintiff's termination was pretextual, as evidenced by Plaintiff's recent promotion and salary increase to $95,000, the fact that no performance issues were raised until the day of termination, Plaintiff's consistent exemplary performance throughout her employment, and the temporal proximity to her protected complaints about disability discrimination and wage violations.

125. Defendants' conduct violated California Government Code section 12940(h) by retaliating against Plaintiff for opposing practices made unlawful by FEHA, specifically disability discrimination, failure to accommodate, failure to engage in the interactive process, and disability harassment.

126. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

127. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## <u>SIXTH CAUSE OF ACTION</u>

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

Wrongful Termination in Violation of Public Policy

(California Common Law)

(Against All Defendants)

128.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

129.   California recognizes a tort cause of action for wrongful termination in violation of fundamental public policy. The public policy protecting disabled employees from discrimination, harassment, and retaliation, and requiring employers to accommodate disabilities and engage in the interactive process, is firmly established in the California Fair Employment and Housing Act and the California Constitution.

130.   Plaintiff was an at-will employee of Defendants from November 9, 2022, through December 9, 2024.

131.   Defendants terminated Plaintiff's employment on December 9, 2024, in violation of fundamental California public policy prohibiting disability discrimination, harassment, and retaliation, as codified in California Government Code sections 12940(a), (h), (j), (m), and (n).

132.   Plaintiff's termination was motivated by her disability status as a cancer survivor, her need for disability-related accommodations, her opposition to disability discrimination and harassment, and her complaints about unlawful employment practices, all of which are protected by fundamental public policy.

133.   Defendants' stated reasons for termination were pretextual. Plaintiff had received a promotion and salary increase to $95,000 just two months before her termination, and no performance concerns had been raised until the morning of December 9, 2024, when Plaintiff complained about the bounced paycheck and within hours was terminated.

134.   The true reason for Plaintiff's termination was retaliation for her August 1, 2024 disability discrimination complaint to Defendants' California headquarters and her December 9, 2024 complaints about wage payment violations, in violation of fundamental public policy protecting employees who oppose unlawful employment practices.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

135. Defendants' conduct violated California public policy as expressed in the California Fair Employment and Housing Act, the California Constitution, the California Labor Code, and California common law.

136. As a direct and proximate result of Defendants' wrongful termination in violation of public policy, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, as well as severe emotional distress, anxiety, humiliation, and mental anguish, all to her damage in an amount to be proven at trial but exceeding $75,000.

137. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

### SEVENTH CAUSE OF ACTION

Breach of Contract

(California Common Law)

(Against All Defendants)

138. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139. On November 8, 2022, Defendants, through their San Francisco headquarters, extended a written offer of employment to Plaintiff via an offer letter for the position of ADA Policy Specialist/Trainer, setting forth specific terms of employment including an annual salary of $70,000, semimonthly pay periods, 40 hours per week, 120 hours of paid time off per year, health and vision benefits, 9 holidays, and a detailed scope of work.

140. Plaintiff accepted Defendants' offer and commenced employment on November 9, 2022, in reliance upon the terms set forth in the offer letter.

141. The offer letter and subsequent course of dealing created an enforceable employment contract between Plaintiff and Defendants under California law, incorporating the

terms, conditions, salary, benefits, and job description set forth in the November 8, 2022 offer letter and as modified by Plaintiff's October 2024 promotion and salary increase to $95,000.

142. Alternatively, if the offer letter did not create an express contract, it created an implied contract based on the specific terms set forth in the offer letter, Defendants' conduct in honoring those terms throughout the employment relationship, Plaintiff's reasonable expectations based on the offer letter and Defendants' conduct, and the parties' course of dealing over more than two years of employment.

143. The employment contract included an implied covenant of good faith and fair dealing, requiring Defendants to refrain from arbitrary or bad faith conduct that would deprive Plaintiff of the benefits of the contract.

144. Plaintiff fully performed her obligations under the employment contract. She consistently met or exceeded job expectations, received positive feedback regarding her work performance, and was promoted with a salary increase to $95,000 in October 2024.

145. Defendants breached the employment contract by terminating Plaintiff's employment on December 9, 2024, without legitimate cause and in violation of the terms, conditions, and implied covenants of the employment relationship.

146. Defendants' termination of Plaintiff was in bad faith and violated the implied covenant of good faith and fair dealing, as evidenced by the sudden assertion of performance concerns for the first time on the day of termination, immediately after Plaintiff complained about the bounced paycheck, despite Plaintiff's recent promotion and salary increase and consistent exemplary performance throughout her employment.

147. Defendants breached the implied covenant by terminating Plaintiff in retaliation for her complaints about disability discrimination and wage payment issues, rather than for any legitimate business reason.

148. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer substantial economic losses, including lost wages, benefits, and employment opportunities, all to her damage in an amount to be proven at trial but estimated to exceed $65,000.

25
**Plaintiff's Complaint for Damages**

**EIGHTH CAUSE OF ACTION**

Fraudulent Misrepresentation

(California Common Law)

(Against All Defendants)

149. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

150. In June 2024, Defendants, through CEO Sally Swanson and accountant Zacharie Morales at the San Francisco headquarters, made false representations to Plaintiff that she needed to falsely claim unapproved time off due to alleged payroll funding shortages at the company.

151. Defendants, through CEO Sally Swanson, made false statements to Plaintiff that Plaintiff had taken "tons" of time off and had failed to properly document her time off, when in fact these allegations were false. As Plaintiff stated in her August 1, 2024 complaint, "Her allegations are false."

152. Following Plaintiff's August 1, 2024 complaint to California headquarters opposing these false allegations and discriminatory conduct, Defendants, through CEO Sally Swanson, made false representations to Plaintiff that her work performance was satisfactory and that no performance concerns existed, as evidenced by Plaintiff's October 2024 promotion and salary increase to $95,000.

153. On December 9, 2024, immediately after Plaintiff complained about the bounced paycheck, Defendants, through CEO Sally Swanson at the San Francisco office, suddenly raised fabricated performance concerns for the first time in Plaintiff's employment and falsely represented that these concerns justified termination.

154. Defendants knew these representations were false at the time they were made. Defendants knew that Plaintiff had not taken excessive time off, that Plaintiff's work performance was exemplary (as demonstrated by her recent promotion and salary increase), and that the purported performance concerns were fabricated as a pretext for retaliation.

26

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

155. Defendants made these false representations with the intent to induce Plaintiff to act or refrain from acting in reliance thereon, specifically to pressure Plaintiff to falsify time records, to discourage her from complaining about discriminatory treatment, and to provide a false justification for her termination.

156. Plaintiff reasonably relied upon Defendants' representations regarding the employment relationship, her job security following the October 2024 promotion and raise, and Defendants' stated reasons for employment decisions.

157. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered substantial economic losses, including lost wages and benefits, as well as severe emotional distress, all to her damage in an amount to be proven at trial but exceeding $75,000.

158. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## NINTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(California Common Law)

(Against All Defendants)

159. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

160. Defendants, through their agents and employees at the San Francisco headquarters, particularly CEO Sally Swanson, engaged in extreme and outrageous conduct toward Plaintiff that exceeded all bounds of decency tolerated in a civilized society.

161. Beginning in June 2024, after Plaintiff informed Swanson that her health status as a cancer survivor made travel difficult, Swanson, acting from California, became irate every time Plaintiff mentioned her health limitations and insisted that physically demanding California travel was mandatory despite Plaintiff's medical condition.

**Plaintiff's Complaint for Damages**

162.   Swanson threatened to examine Plaintiff's time off because she falsely accused Plaintiff of lying about not documenting doctor appointments, and threatened to add additional job duties because she did not think Plaintiff was doing enough, all in response to Plaintiff's expression of disability-related limitations.

163.   In June 2024, Defendants, through California management, pressured Plaintiff, a cancer survivor undergoing continuing medical treatment, to falsely claim unapproved time off and misrepresent her medical appointments, demonstrating callous disregard for Plaintiff's medical needs and legal rights.

164.   After Plaintiff sent her August 1, 2024 formal complaint to HR at the San Francisco headquarters invoking her disability rights and describing the hostile work environment created by Swanson's false allegations and sharing of Plaintiff's private medical information, Defendants escalated their hostile conduct rather than remedying the situation.

165.   Swanson, from the San Francisco office, made continuous hostile references to Plaintiff's medical appointments and medical-related absences, falsely accused Plaintiff of taking excessive time off, shared Plaintiff's private medical information with others at the firm, and created a hostile work environment based on Plaintiff's disability status.

166.   Defendants' conduct culminated on December 9, 2024, when, within hours of Plaintiff complaining about a bounced paycheck that had caused financial hardship to Plaintiff and her family, Defendants, through the San Francisco headquarters, suddenly raised fabricated performance concerns for the first time and terminated Plaintiff's employment the same day.

167.   Defendants knew or should have known that their conduct would cause severe emotional distress to Plaintiff, a cancer survivor dealing with ongoing medical challenges. Defendants knew that targeting Plaintiff based on her disability status, falsely accusing her regarding her medical appointments, threatening her job security in response to medical needs, pressuring her to falsify records, and ultimately terminating her in retaliation for opposing this conduct would cause severe emotional harm.

168.   Defendants' conduct was intentional and reckless, undertaken with conscious disregard for Plaintiff's rights and well-being.

**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

169. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff suffered and continues to suffer severe emotional distress, anxiety, humiliation, mental anguish, and physical manifestations of emotional distress. As Plaintiff stated in her August 1, 2024 complaint to California headquarters, Swanson's "aggressive behavior and false accusations" caused her "mental and physical distress."

170. Plaintiff's emotional distress was severe and of such substantial quantity or enduring quality that no reasonable person in civilized society should be expected to endure it.

171. As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages in an amount to be proven at trial but exceeding $75,000.

172. Defendants' conduct was willful, malicious, fraudulent, and oppressive, and was done with conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages pursuant to California Civil Code section 3294 in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## TENTH CAUSE OF ACTION

Waiting Time Penalties

(California Labor Code § 203)

(Against All Defendants)

173. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

174. California Labor Code sections 201 and 202 require employers to pay all wages due to employees immediately upon termination or within 72 hours of resignation.

175. California Labor Code section 203 provides that if an employer willfully fails to pay wages due upon termination, the employer is liable for waiting time penalties equal to the employee's daily wage for each day the wages remain unpaid, up to a maximum of 30 days.

176. On December 9, 2024, Defendants terminated Plaintiff's employment.

29
**Plaintiff's Complaint for Damages**

177. Upon termination, Defendants were required to pay Plaintiff all wages due, including all earned but unpaid salary, accrued but unused paid time off, and any other compensation owed.

178. Defendants willfully failed to pay Plaintiff all wages due upon termination. This failure was willful because Defendants had already demonstrated their intent to withhold wages from Plaintiff through the bounced paycheck incident in late November/early December 2024, when Defendants issued Plaintiff a paycheck from their California bank account that was dishonored due to insufficient funds.

179. Defendants' termination of Plaintiff on the same day she complained about the bounced paycheck demonstrates Defendants' willful intent to deny Plaintiff the wages she was lawfully owed.

180. At the time of termination, Plaintiff's daily rate of pay was approximately $365.38 per day based on her annual salary of $95,000.

181. As of the date of this Complaint, Defendants have failed to pay Plaintiff all wages due upon termination, entitling Plaintiff to waiting time penalties under California Labor Code section 203.

182. Pursuant to California Labor Code section 203, Plaintiff is entitled to waiting time penalties equal to her daily wage for each day Defendants have failed to pay all wages due, up to a maximum of 30 days.

183. Plaintiff is also entitled to recover reasonable attorneys' fees and costs pursuant to California Labor Code section 218.5.

### ELEVENTH CAUSE OF ACTION

Breach of Contract – Unpaid Wages

(Alabama Law – Pleaded in the Alternative)

(Against All Defendants)

184. Plaintiff realleges and incorporates by reference paragraphs 1 through 172 as though fully set forth herein.

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

185.    Plaintiff pleads this cause of action in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and 8(d)(3), and only to the extent the Court determines that one or more California statutory wage-payment remedies (including California Labor Code section 203) are inapplicable based on choice-of-law or extraterritoriality principles.

186.    Plaintiff and Defendants entered into an employment agreement under which Plaintiff would perform work for Defendants in exchange for compensation, including wages paid on a regular and agreed schedule and in the agreed amounts.

187.    Under the terms of the employment agreement, Defendants were obligated to pay Plaintiff her earned wages in a timely manner on the agreed semimonthly schedule.

188.    Defendants breached the wage-payment obligations of the parties' agreement by, among other things: (a) failing to pay Plaintiff's earned wages when due on November 30, 2024; (b) issuing Plaintiff a paycheck that was not backed by sufficient funds and was not payable when presented to the bank in early December 2024; (c) failing to promptly cure the nonpayment and timely remit all earned wages owed to Plaintiff; and (d) failing to pay Plaintiff all wages due upon termination on December 9, 2024.

189.    As a direct and proximate result of Defendants' breach of their wage-payment obligations, Plaintiff suffered damages including unpaid wages, consequential financial losses caused by the late and bounced wage payment (including bank fees, late payment fees on Plaintiff's own obligations, and credit damage), and other damages according to proof.

190.    Plaintiff is entitled to recover contractual damages for all unpaid wages and consequential damages, pre-judgment and post-judgment interest as allowed by law, and such other relief as the Court deems proper.

**TWELFTH CAUSE OF ACTION**

Work and Labor Done / Quantum Meruit

(Alabama Law – Pleaded in the Alternative)

(Against All Defendants)

31
**Plaintiff's Complaint for Damages**

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

191.    Plaintiff realleges and incorporates by reference paragraphs 1 through 179 as though fully set forth herein.

192.    Plaintiff pleads this cause of action in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and 8(d)(3), and only to the extent Defendants contend there is no enforceable agreement governing wage payment, or to the extent the Court determines Plaintiff cannot recover contract damages for unpaid or late wages under the Eleventh Cause of Action or the Tenth Cause of Action.

193.    From November 9, 2022, through December 9, 2024, Plaintiff provided valuable services and labor to Defendants as an ADA Policy Specialist/Trainer, including the work described in this Complaint, at Defendants' request and for Defendants' benefit.

194.    The services Plaintiff provided included counseling and advising Defendants' clients on ADA and EEO compliance issues, representing clients during investigations and audits by government agencies, developing guidance documents on policies including reasonable accommodation policies, conducting training on accessible meeting production, analyzing essential functions in job descriptions, providing guidance on undue hardship and direct threat determinations, and counseling clients on ADA, FMLA, workers' compensation, and California disability employment law.

195.    Defendants requested, accepted, and retained the benefit of Plaintiff's services, including the value of Plaintiff's labor during all relevant payroll periods, and particularly during the November 2024 payroll period when wages were not timely paid and during the final pay period ending with Plaintiff's termination on December 9, 2024.

196.    The reasonable value of Plaintiff's services rendered to Defendants was no less than the contractually agreed compensation of $95,000 per year ($7,307.69 per semimonthly pay period, or approximately $365.38 per day).

197.    Under principles of equity and good conscience, Defendants should not be permitted to retain the benefit of Plaintiff's services without paying Plaintiff the reasonable value of that work.

198.    Defendants have failed and refused to pay Plaintiff the full reasonable value of her services and labor, including wages earned but not paid in November and December 2024, and all wages due upon termination.

199.    As a direct and proximate result, Plaintiff has been damaged in an amount according to proof, including the reasonable value of services rendered, plus applicable interest and any other relief the Court deems proper.

**THIRTEENTH CAUSE OF ACTION**

Invasion of Privacy – Disclosure of Private Medical Information

(Alabama Law – Pleaded in the Alternative)

(Against All Defendants)

200.    Plaintiff realleges and incorporates by reference paragraphs 1 through 188 as though fully set forth herein.

201.    Plaintiff pleads this cause of action in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2) and 8(d)(3), and only to the extent the Court determines Plaintiff's California statutory remedies for disability-based harassment and improper disclosure of medical information are limited by choice-of-law or extraterritoriality principles.

202.    Plaintiff has a legally protected privacy interest under Alabama common law in her confidential medical information, including information relating to her cancer diagnosis and history, cancer treatment (surgery, chemotherapy, and radiation), disability status, ongoing medical appointments and continuing medical care needs, physical limitations resulting from her cancer and treatment, and any accommodation-related needs.

203.    Defendants, through their agents and decision-makers, including CEO Sally Swanson and HR Director Brenda Nasio at Defendants' San Francisco headquarters, obtained and possessed Plaintiff's private medical information in the context of Plaintiff's employment.

204.    Beginning in June 2024, Defendants, through CEO Sally Swanson, disclosed and caused to be disclosed Plaintiff's private medical information to others at the firm who did not have a legitimate business need to receive it, and discussed Plaintiff's medical status, cancer history,

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA  94104

medical appointments, and disability-related absences in a manner that exceeded any legitimate workplace purpose.

205.    Specifically, as Plaintiff stated in her August 1, 2024 complaint to HR, CEO Swanson was "sharing my private medical information with others at the firm." Plaintiff learned that Swanson had disclosed her private medical information to other employees and team members through statements made to Plaintiff by coworkers and through Swanson's own references to having discussed Plaintiff's medical status with other team members during June and July 2024.

206.    These disclosures were made to individuals, including but not limited to other employees and team members at Defendants' offices, who had no legitimate need to know Plaintiff's medical information, and the disclosures served no legitimate business purpose but rather were intended to embarrass, harass, and retaliate against Plaintiff for her disability-related needs.

207.    Defendants' disclosure and dissemination of Plaintiff's private medical information—including her cancer diagnosis, treatment, ongoing medical appointments, and disability status—would be highly offensive to a reasonable person and violated Plaintiff's right to privacy under Alabama common law.

208.    The disclosure of such intimate medical information about a cancer survivor's diagnosis, treatment, ongoing care needs, and physical limitations is precisely the type of private fact that, when publicly disclosed without consent or legitimate purpose, constitutes an egregious invasion of privacy.

209.    As Plaintiff stated in her August 1, 2024 complaint, "My medical status is private and protected information," and she would "not tolerate Sally creating a hostile workplace for me by discussing my medical status with anyone else at the office." Defendants nevertheless continued their improper disclosures of Plaintiff's medical information.

210.    As a direct and proximate result of Defendants' invasion of Plaintiff's privacy through the unauthorized disclosure of her private medical information, Plaintiff suffered damages including severe emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, anxiety, and related harms, all in an amount to be proven at trial but exceeding $75,000.

**Plaintiff's Complaint for Damages**

211.    Defendants' conduct was willful, malicious, wanton, and in reckless and conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages pursuant to Alabama law in an amount sufficient to punish Defendants and deter others from engaging in similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff T. Dorius respectfully requests that this Court enter judgment in her favor and against Defendants SSA Architecture & Planning, Inc. and Sally Swanson Architecture, Inc., jointly and severally, as follows:

A.    Compensatory Damages:

Economic damages for lost wages, lost benefits, unpaid wages, and other economic losses according to proof at trial;

General damages for emotional distress, mental anguish, humiliation, embarrassment, loss of dignity, reputational harm, and pain and suffering according to proof at trial;

Consequential damages including financial losses caused by late and bounced wage payments;

Front pay in an amount to be determined at trial;

Damages for the reasonable value of services rendered under quantum meruit principles, to the extent applicable;

B.    Statutory Damages:

Waiting time penalties pursuant to California Labor Code section 203 for up to thirty (30) days, to the extent applicable;

C.    Equitable Relief:

Back pay with prejudgment interest;

Such other equitable relief as the Court deems appropriate;

D.    Punitive Damages:

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

Punitive and exemplary damages in an amount sufficient to punish Defendants and deter others from engaging in similar conduct, pursuant to California Civil Code section 3294 and Alabama common law;

E.      Attorneys' Fees and Costs:

Reasonable attorneys' fees and costs of suit pursuant to California Government Code section 12965(b), California Labor Code section 218.5, and other applicable statutes and rules;

F.      Interest:

Pre-judgment and post-judgment interest on all damages awarded, to the extent permitted by law; and

G.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

Dated: March 20, 2026        LAW OFFICES OF DANIEL FEDER

By: *Daniel L. Feder*
DANIEL FEDER
Attorney for Plaintiff

The Law Office of Daniel Feder
235 Montgomery Street, Suite 1019
San Francisco, CA 94104

36
**Plaintiff's Complaint for Damages**